# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:20-cr-89 (JAM) |
| NEVILLE WALTERS, *Defendant*. | |

## ORDER DENYING IN PART AND GRANTING IN PART MOTION TO SUPPRESS

Defendant Neville Walters moves to suppress evidence that the police seized while executing a search warrant for his apartment. I conclude that the affidavit submitted by the police in support of the warrant demonstrated clear probable cause to search the apartment. Although Walters disputes the accuracy of certain allegations in the affidavit, the affidavit still establishes probable cause independent of any of these alleged errors or discrepancies.

Accordingly, to the extent that Walters challenges the validity of the search warrant, I will deny Walters' motion to suppress. As to Walters' additional claim that the police unlawfully seized three particular items that were beyond the scope of the warrant, I will deny his motion as to the two gold rings but will grant his motion as to the black cell phone in an Otterbox case.

### BACKGROUND

On June 3, 2020, a federal grand jury returned an indictment against Walters charging him with firearms and narcotics trafficking charges. Doc. #10. The charges stem from the execution of a search warrant that occurred at Walters' apartment on Prospect Street in Bristol, Connecticut. A state court judge issued the search warrant on May 11, 2020 on the basis of a sworn affidavit co-signed by two Bristol police officers. Doc. #24. The warrant authorized a search of the apartment for evidence that Walters was in violation of the Connecticut law that

1

prohibits persons who have been previously convicted of a felony crime from possessing a firearm, Conn. Gen. Stat. § 53a-217.

The search warrant affidavit alleges on the basis of multiple sources of information that Walters lived at the apartment to be searched. *Id*. at 6 (¶ 17). It also alleges that Walters is a convicted felon who is barred by law from possessing a firearm. *Id.* at 2 (¶ 4).

The affidavit goes on to describe five photographs and four videos that were posted on Walters' Instagram profile from April 26 to May 9, 2020. Doc. #24 at 2-4 (¶¶ 5-11). It alleges in part that "[o]n April 27th of 2020, Walters posted a photograph of his face and hand pointing what appears to be a Glock handgun towards the camera with a caption that reads, 'I stay gee'd up.'" Doc. #24 at 3 (¶ 5). It also reviews the particulars of photographs and videos that were posted on April 26, April 28, April 30, May 7, May 8, and May 9, 2020—all of which show one or more firearms. *Id.* at 2-4 (¶¶ 5-11).[1]

The affidavit sets forth a basis to conclude that the Instagram images were taken by a camera inside Walters' apartment. For three of the images, it recounts details—such as the appearance of the kitchen countertops, floor tiles, and a bathroom radiator—that are alleged to be consistent with or the same as the characteristics that appear in photographs of the apartment for a rental listing on Realtor.com. *Id.* at 3-4 (¶¶ 8, 10-11). In addition, the affidavit alleges that the police showed some or all of the images to the landlord of the apartment, and the landlord "positively identified" the apartment from the images "after observing the flooring, counters, cabinets and trim." *Id.* at 6 (¶ 16).

---

[1] The parties have filed the Instagram photos and videos on the record. *See* Docs. #24-3 at 1-6; #32-1 at 1 (Ex. 1); #32-3 at 1 (Ex. 3); #32-4 at 1 (Ex. 4); # 32-5 at 1 (Ex. 5). Because the actual images were not submitted to the state court judge, I do not consider them with respect to whether the affidavit itself established probable cause for a search warrant. I consider the images only for the limited purpose of evaluating Walters' claims that the affidavit contains statements about this evidence that the police knew or should have known to be false.

The affidavit also sets forth facts to suggest that the various Instagram images posted to Walters' account depict recent activity by Walters. According to the affidavit, Instagram is a "social media Internet platform [that] one uses . . . as a daily biography detailing ones [sic] life." *Id*. at 2 (¶ 4). "It is also common knowledge that individuals who post to social media do so 'in the now,' to show off their current escapades." *Id.* at 6 (¶ 18). In addition, based on the officers' training and experience, the affidavit attests that "those who own firearms generally maintain possession of them for long periods of time." *Ibid*. (¶ 20).

On May 12, 2020, law enforcement officers executed the search warrant. The search warrant inventory reflects the seizure of evidence including two firearms, firearms magazines, ammunition, cash, possible narcotics, drug paraphernalia, two gold rings, and three cell phones. *Id.* at 11.

Walters now moves to suppress the evidence on three grounds. First, he argues that the supporting affidavit did not establish probable cause. Second, he argues that the officers deliberately or recklessly provided false information in their supporting affidavit to secure the search warrant. Third, he argues that the police exceeded the scope of the warrant by seizing two gold rings and a black cell phone in an Otterbox case.

## DISCUSSION

The Fourth Amendment protects the rights of people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. When a judge decides if there is probable cause to support a search warrant, the judge must decide if there is a fair probability that contraband or evidence of a crime will be

found in a particular place, and this determination requires only a practical, common sense evaluation in light of all the facts set forth in an affidavit. *See United States v. DiTomasso*, 932 F.3d 58, 66 (2d Cir. 2019). "Although probable cause requires more than mere suspicion of wrongdoing, it focuses on probabilities, not hard certainties." *Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017) (internal quotations omitted).

A search warrant may be challenged on the ground that the affidavit submitted in support of the warrant fails on its face to show probable cause that the requested search will reveal evidence of a crime. Alternatively, even if the affidavit is sufficient on its face, the warrant may be challenged if the police intentionally or recklessly included or omitted facts in the affidavit that were necessary to a judge's determination of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Walters argues that only two of the images posted to the Instagram account show his face and that—contrary to what is alleged in the search warrant affidavit—these images "do not clearly show what he is holding." Doc. #23 at 10. But one of the photographs very clearly shows Walters pointing a gun at close range directly at the camera. Doc. #24-3 at 1. Although it is less clear what Walters is holding as shown in the second photograph (*id*. at 3), any uncertainty about what this second photograph shows is academic in light of the clarity of the first photograph that shows Walters holding a firearm. Moreover, Walters does not challenge the affidavit's allegation that all of the Instagram postings were made to his own profile account or that the two photos at issue show his face.

Walters further argues that the affidavit did not show probable cause to conclude that the Instagram images were taken inside his apartment. But, as described above, the affidavit recounts how several interior details from the images correspond to photos of the apartment on

Realtor.com, as well as how the apartment landlord independently verified that the images shown were from inside the apartment. Notwithstanding Walters' argument that some of the interior details are generic to many apartments, the specific facts alleged in the affidavit are easily enough to establish a fair probability that the images were taken inside Walters' apartment and not somewhere else.

Walters next argues that, even if there was evidence that he once possessed a firearm in his apartment, there was no probable cause to believe that he *continued* to do so at the time of the search because the affidavit establishes only "the date that the Instagram photos and videos were posted, [and] this is not necessarily the same date that the photograph or video was created." Doc. #23 at 10. As noted above, however, the affidavit describes grounds to conclude that users generally post images to Instagram very near the time when the images are created and also that persons tend to retain firearms for a substantial period of time. The probability that Walters continued to possess a firearm in his apartment is further supported by Walters' words that he posted to Instagram along with the photograph in which he was pointing a gun at the camera: "I stay gee'd up." Doc. #24-3 at 1-2.

Walters otherwise disputes additional allegations in the affidavit that suggest his involvement with a shooting that occurred on April 4, 2020 and his arrest that same day on a firearms charge. Doc. #24 at 4-5 (¶¶ 12-14). But even assuming all these allegations to be wrong, they do not dissipate the existence of probable cause for the apartment search on the basis of the wholly separate facts set forth in the affidavit relating to Walters' Instagram postings from April 26 to May 9, 2020. These separate facts by themselves establish probable cause to believe that a search of Walters' apartment would reveal his unlawful possession of one or more firearms. It is well established that untrue facts in a search warrant affidavit are not grounds to conduct an

evidentiary hearing or to invalidate a search warrant if the remaining facts are enough on their own to establish probable cause. *See United States v. Caraher*, 973 F.3d 57, 62 (2d Cir. 2020); *Ganek v. Leibowitz*, 874 F.3d 73, 82 (2d Cir. 2017).

The same reasoning requires me to reject Walters' additional arguments about other allegations in the affidavit that he believes to be untrue. For example, Walters disputes that he was previously convicted of a crime specifically involving the use of a firearm. But he does not dispute the affidavit's more general allegation that he was previously convicted of a felony crime such that he could not lawfully possess a firearm. Even if none of his prior convictions involved a use of firearms, this would not dispel the probable cause that was independently established by the affidavit to search his apartment for firearms.

Walters also disputes the affidavit's characterization of the Instagram images with respect to alleged tattoos on his hands and a laser affixed to one of the guns. Again, even if Walters is right in this respect about what particular images show (or do not show), the remaining allegations of the affidavit clearly establish probable cause to conclude that a search of Walters' apartment would reveal evidence of his unlawful possession of one or more firearms.

Because the affidavit on its face establishes probable cause and because Walters has failed to make a threshold showing that any of the alleged defects in the affidavit would have negated the existence of probable cause, there are no grounds for me to suppress the evidence from the search or to conduct an evidentiary hearing. Nor need I consider in the absence of a predicate violation of the Fourth Amendment whether the exclusionary rule should apply.

Lastly, Walters argues that the police seized certain items—two gold rings and a black cell phone in an Otterbox case—that exceeded the scope of the warrant (which was limited only to firearms-related evidence, *see* Doc. #24 at 10) and that were not otherwise subject to seizure

under any exception to the warrant requirement. As to the gold rings, the Government responds that they were seized from Walters' person by means of a search incident to arrest on the day that the police executed the search warrant. Doc. #24-1 at 10 (police report).

The search-incident-to-arrest exception to the Fourth Amendment's warrant requirement allows the police to seize personal items from an arrestee's person without any further showing of probable cause to seize such items as evidence. *See, e.g., United States v. Diaz*, 854 F.3d 197, 205, 208 (2d Cir. 2017). In this respect, the search-incident-to-arrest exception differs from the plain-view exception to the Fourth Amendment's warrant requirement which allows a seizure only if the criminality of the item to be seized is immediately apparent (*i.e.*, if the police have probable cause to believe the item is contraband). *See United States v. Delva*, 858 F.3d 135, 149 (2d Cir. 2017); *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). Because Walters has filed a reply brief that does not challenge the Government's assertion that the two rings were seized from his person by means of a search incident to his arrest, I will deny his motion to suppress the two rings without prejudice to a motion for reconsideration in the event that Walters has a further basis not yet made apparent to seek suppression of this evidence.

As to Walters' challenge to the seizure of the black cell phone in an Otterbox case, the Government does not dispute that the warrant did not authorize the seizure of any cell phones. "[T]he presence alone of a cell phone, or even several cell phones, in a home is not inherently incriminating." *United States v. Babilonia*, 854 F.3d 163, 180 (2d Cir. 2017). Other than conclusorily arguing that cell phones in general are the fruits and instrumentalities of drug trafficking, the Government does not set forth any basis for the police to believe that this particular cell phone was used for drug trafficking purposes. *Compare* Doc. #32 at 23, *with Babilonia*, 854 F.3d at 180 (discussing basis for plain-view seizure of cell phones during search

where investigation of defendant involved his "use of numerous cell phones in connection with his purported criminal activity"). And there is no claim by the Government that this cell phone has any connection to the crime—unlawful firearm possession—for which the search was authorized.

Nor does the Government state that it has timely applied for a warrant to search the contents of the cell phone. *See United States v. Smith*, 967 F.3d 198 (2d Cir. 2020). It is unclear that the cell phone by itself has any evidentiary value. Accordingly, I will grant the motion to suppress the black cell phone in the Otterbox case without prejudice to a motion for reconsideration in the event that the Government has a further basis not yet made apparent to justify seizure of this particular cell phone and its introduction as an exhibit at trial.

## CONCLUSION

For the reasons set forth above, the motion to suppress (Doc. #22) is DENIED in major part and GRANTED in part as set forth in this ruling.

It is so ordered.

Dated at New Haven this 9th day of March 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge