UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NEVILLE WALTERS,<br>   *Defendant*. | No. 3:20-cr-00089 (JAM) |

## ORDER DENYING MOTION TO WITHDRAW

Just three weeks before jury selection, counsel for defendant Neville Walters has filed a motion to withdraw and for the appointment of new counsel. Because the motion is untimely, because there are no justified reasons for Walters' alleged lack of trust in and communication with counsel, and because the appointment of new counsel would substantially delay the trial of a criminal case that has been pending for nearly two years, I will deny the motion.

### BACKGROUND

Walters was arrested in May 2020 on the basis of a federal criminal complaint.[1] The Court appointed Assistant Federal Defender Moira Buckley at his initial presentment to represent Walters.[2]

On June 3, 2020, a federal grand jury returned an indictment charging Walters with three federal crimes: (1) possession with intent to distribute fentanyl and marijuana; (2) unlawful possession of a firearm by a convicted felon; and (3) possession of a firearm in furtherance of a drug trafficking crime.[3]

---

[1] Doc. #1 (sealed complaint); Doc. #2 (arrest warrant).
[2] Doc. #6 at 1 (minute entry for initial appearance). More recently, Assistant Federal Defender Carly Levenson filed a notice of appearance on March 12, 2022 to co-represent Walters for trial. Doc. #62.
[3] Doc. #10 (indictment).

1

The indictment alleges that all three crimes took place on May 12, 2020. That was the day the police executed a search warrant at Walters' apartment, and they found two firearms, narcotics, and narcotics trafficking paraphernalia.[4]

On July 14, 2020, I convened a scheduling conference and set the case down for trial in November 2020, while asking counsel to consult and propose a date for the filing of any pre-trial "substantive" motions (such as a motion to suppress or a motion to dismiss the indictment).[5] Attorney Buckley filed a consent motion to file any substantive motions by September 17, 2020, and I granted this motion.[6]

On September 17, 2020, Attorney Buckley filed a motion to suppress evidence obtained from the search of Walters' apartment.[7] The motion claimed that the search warrant affidavit did not establish probable cause, that there were material misstatements in the affidavit, and that items were seized beyond the scope of the warrant.[8]

On March 9, 2021, I denied in part and granted in part the motion to suppress.[9] I concluded that there was clear probable cause established in the search warrant affidavit and that, even if I were to credit Walters' arguments that certain facts as alleged in the affidavit were false or misleading, the remaining and unchallenged factual allegations were enough to establish probable cause.[10] Accordingly, I denied the motion to suppress to the extent that it sought blanket suppression of all the incriminating items found in the apartment but granted suppression of a particular cell phone that was beyond the scope of the warrant.[11]

---

[4] Doc. #1-1 at 11-12 (criminal complaint affidavit).
[5] Doc. #17.
[6] Doc. #18 (consent motion); Doc. #19 (order).
[7] Doc. #22 (motion to suppress).
[8] *Ibid.*
[9] Doc. #42; *see United States v. Walters*, 2021 WL 869686 (D. Conn. 2021).
[10] Doc. #42 at 4-6.
[11] *Id.* at 6-8.

While the motion to suppress was pending, Attorney Buckley filed a motion to reconsider Judge Farrish's prior order of pre-trial detention.[12] Judge Farrish conducted a video hearing on October 28, 2020 and denied the motion, although he made clear that Attorney Buckley had offered Walters excellent representation on that issue.[13] At the hearing, Walters did not raise any concerns about Attorney Buckley.

As noted above, I originally scheduled trial for November 2020.[14] But Walters moved to continue the trial five times in September 2020, January 2021, March 2021, August 2021, and October 2021, and on each occasion Walters agreed to waive his right to a speedy trial.[15] The record does not reflect any concerns lodged by Walters about Attorney Buckley between his arrest in May 2020 and the current motion to withdraw that was filed on March 17, 2022.

The multiple continuance motions filed by Attorney Buckley reflect that she was in regular communication with Walters about the trial and his options. For example, on March 22, 2021, Attorney Buckley filed a consent motion to continue trial which stated in part:

> Undersigned counsel met with Mr. Walters on Friday, March 19, 2021. Without disclosing specific conversation, undersigned counsel reviewed with Mr. Walters the Court's ruling on his motion to suppress, ECF Doc. 42 (ruling denying motion and granting it in part), and his options going forward. Mr. Walters and counsel agree that Mr. Walters needs additional time, given the Court's ruling on the motion to suppress, his inability to review discovery in person with counsel (until recently), to consider whether he wishes to pursue trial or resolve the matter with a plea agreement. He readily agreed to execute a speedy trial waiver until September 10, 2021.[16]

---

[12] Doc. #34.
[13] Doc. #36 (audio recording on file).
[14] Doc. #19 (scheduling order).
[15] Docs. #26, #40, #44, #46, #58. All motions were consented to by the Government, and trial continuances were granted in part due to the COVID-19 pandemic.
[16] Doc. #44 at 1.

On August 7, 2021, Attorney Buckley filed another consent motion to continue trial, explaining at length how there had been a favorable turn in plea negotiations and how Walters needed more time to evaluate his options:

> In March 2021, when Mr. Walters made his previous motion to continue, the basis for the motion (in part) was to allow Mr. Walters to consider his options given the Court's ruling on his motion to suppress evidence. Without discussing specifics, at the time, the Government had drafted a proposed plea letter that undersigned counsel reviewed with Mr. Walters. At that juncture, Mr. Walters had to consider the landscape of the case with the suppression motion denied, and a potential plea offer on the table.
> As recent as this week, the potential guidelines ranges have changed significantly based on the parties' analysis of career offender applicability (or lack thereof). Given this recent and significant change, Mr. Walters needs additional time to consider the plea proposal.
> Mr. Walters is held in federal custody at Corrigan Correctional Center in Uncasville. In addition to the federal indictment, he faces a violation of probation allegation and other substantive charges in Hartford superior court related to alleged firearm possession. Mr. Walters has many factors to consider relating to all cases – state and federal, that may potentially impact one another. Until yesterday, he had not met his state defense attorney in person to discuss those matters in detail (his defense attorney in the state matter was only recently assigned to the case and has diligently apprised undersigned counsel of the status of the state case - which has, in part, been stuck in a holding pattern due to the pandemic's effect on state court business). Mr. Walters's state attorney met with him today along with undersigned counsel.
> Mr. Walters seeks additional time to consider the most recent plea proposal. If he rejects the plea proposal, parties will request a "Frye" hearing and need additional time to prepare for trial. The change from the earlier guidelines analysis to the current analysis warrants further discussion and consideration between undersigned counsel and Mr. Walters.
> These circumstances are extraordinary because Mr. Walters has new information (in the form of a proposed plea offer) that only recently came to his attention, that he needs to consider before deciding whether to accept the offer. Counsel communicated the new offer to Mr. Walters immediately (the day after receiving the written proposal), and counsel expects that she will need to meet with Mr. Walters again to discuss the offer further after Mr. Walters has had time to consider it. Given undersigned counsel's schedule, the earliest she may be able to do that is the week of August 16.
> Finally, there is good cause to continue jury selection. Rule 11 of the Federal Rules of Criminal Procedure requires the Court to ensure that a guilty plea is voluntary. Mr. Walters' request to continue trial because he needs more time to consider pleading guilty, fosters that objective because it enables him to make the decision (whether to plead guilty or go to trial) without feeling compelled to make the decision before he is ready.
> Mr. Walters' waiver of speedy trial will be filed today.[17]

---

[17] Doc. #46 at 1-3.

On October 25, 2021, Judge Farrish conducted a *Frye* hearing in order to ensure that Walters had been advised of the terms of the Government's plea offer.[18] Walters did not raise any complaints during this *Frye* hearing about the quality of Attorney Buckley's representation.

On October 26, 2021, Attorney Buckley filed another consent motion to continue trial, now for an additional five months from December 2021 to the current jury selection date of April 7, 2022.[19] This motion contained a similar lengthy recitation of Attorney Buckley's efforts on Walters' behalf and the need for additional time for Walters to consider another still more favorable plea offer from the Government that had been the subject of the *Frye* hearing the day before.[20]

The motion also stated that Walters was "more than willing to waive his speedy trial rights to April 7, 2022."[21] And the motion was followed the next day by the filing of a speedy trial waiver personally signed by Walters and asking me to conclude "that the requested continuance is in the best interest of the defendant, and outweighs the public interest in a speedy trial."[22]

Then, on March 17, 2022, Attorney Buckley filed a motion to withdraw and to have new counsel appointed for Walters pursuant to the Criminal Justice Act.[23] The motion alleges that "[u]ndersigned counsel and Mr. Walters have reached an insurmountable breakdown in their attorney-client relationship" and that "[a]s a result, during an in-person visit yesterday afternoon[,] Mr. Walters requested that undersigned counsel withdraw from his case and that the Court appoint replacement counsel."[24]

---

[18] Doc. #56 (audio recording on file).
[19] Doc. #58.
[20] *Id.* at 1-4.
[21] *Id.* at 3.
[22] Doc. #59.
[23] Doc. #63.
[24] *Id.* at 1.

5

> This motion is based on good cause. Undersigned counsel and, apparently, Mr. Walters, believe that an irreconcilable breakdown in their relationship has occurred. Mr. Walters has clearly stated that he does not trust undersigned counsel's advice and strategy and undersigned counsel is finding it difficult to discharge her duties based on his lack of trust. Moreover, Mr. Walters is unhappy with undersigned counsel's handling of his case in all respects.
> Mr. Walters should have confidence in his counsel, but he clearly does not. Undersigned counsel is finding it difficult to communicate with Mr. Walters in an effective manner and wants to ensure that he is represented by counsel with whom he can meaningfully communicate.[25]

The motion further requests a continuance of trial in order for new counsel to be appointed and to prepare for trial.[26]

I conducted a hearing on the motion to withdraw on March 22, 2022.[27] At the hearing, the Government stated that it takes no position on the motion. After counsel for the Government agreed to leave the courtroom, I heard *ex parte* from Attorney Buckley and Walters on the particular grounds for the motion to withdraw. The major reason stated by Walters for his dissatisfaction with Attorney Buckley was that she had not filed certain motions that he wanted her to file. Attorney Buckley confirmed that she had not done so because in her professional judgment the motions were not in Walters' best interest.[28] This ruling now follows.

## DISCUSSION

The Sixth Amendment protects the right of a criminal defendant to the effective assistance of counsel and guarantees that right by means of the appointment of counsel if the defendant is unable to afford counsel. *See* U.S. CONST., amend. VI; *Gideon v. Wainwright*, 372 U.S. 335 (1963). But "while the right to select and be represented by one's preferred attorney is

---

[25] *Id.* at 1-2.
[26] *Ibid.*
[27] Doc. #65 (minute entry).
[28] There is no transcript of the withdrawal hearing. I advised the parties that the *ex parte* portion of the hearing would remain *ex parte* and be sealed by the Court because of any possibility that statements by Attorney Buckley or Walters could be used against Walters at trial. To the extent that I refer to the reasons stated at the hearing, I limit my description solely to what I believe necessary for purposes of this ruling.

comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988).[29]

Where, as here, a court has appointed counsel to represent a criminal defendant, a criminal defendant does not have an unfettered right to reject his appointed counsel and to insist on the appointment of new counsel. As the Second Circuit has explained, "[a] trial court may require a defendant to proceed to trial with counsel not of defendant's choosing," and "certain restraints must be put on the reassignment of counsel, lest the right be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *United States v. Miranda*, 152 F.3d 921, at *1 (2d Cir. 1998). Moreover, "[w]here the application is made during or on the eve of trial, a defendant can only substitute new counsel when unusual circumstances are found to exist, such as a complete breakdown of communication or an irreconcilable conflict." *Ibid.*[30]

The Second Circuit has identified four factors to consider when reviewing a district court's decision to deny a motion to appoint new trial counsel: "(1) the timeliness of defendant's request for new counsel; (2) the adequacy of the trial court's inquiry into the matter; (3) whether the conflict resulted in a total lack of communication between the defendant and his attorney; and (4) whether the defendant's own conduct contributed to the communication breakdown." *United States v. Carreto*, 583 F.3d 152, 158 (2d Cir. 2009). Although these factors are framed as

---

[29] For ease of readability, my quotations from cases in this ruling omit internal citations, quotation marks, brackets, etc.

[30] Although the Second Circuit's decision in *United States v. Miranda* is unpublished, the portions quoted in the text above are drawn from prior published precedent of the Second Circuit. *See United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997); *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981).

factors to guide appellate review, they are useful for a district court as well in deciding whether to exercise its discretion to grant a motion to withdraw and to appoint substitute counsel.

### *Timeliness*

With respect to the first factor, the motion to withdraw and appoint new counsel is not timely. The motion was filed just three weeks before jury selection and nearly two years after Attorney Buckley was first appointed to represent Walters. The Second Circuit has found untimely a motion "to substitute counsel—appointed more than eleven months earlier—with new counsel less than three weeks before trial," where the granting of the motion would have required "a continuance that would have delayed the start of the trial." *United States v. Scott*, 637 F. App'x 10, 14 (2d Cir. 2015).

Is there a good reason for the motion to have been filed so late in this case? I don't think so. Based on my queries at the hearing on this motion, Walters is unhappy that Attorney Buckley did not file additional substantive motions beyond the motion to suppress that she filed. But if Walters were genuinely concerned that Attorney Buckley had failed to file more substantive motions, then any such concerns could and should have been raised a long time ago—at or near the deadline for the filing of substantive motions in September 2020. The fact that Walters raised no such concerns at the time or in the interim (including when he appeared before Judge Farrish for a detention hearing in October 2020 and then a *Frye* hearing in October 2021) and that he repeatedly signed speedy trial waivers strongly suggests to me that Walters' professed unhappiness with Attorney Buckley has either been manufactured or magnified as of late in hopes of securing another delay of trial.

### *Adequacy of inquiry*

With respect to the second factor, the Second Circuit examines the degree to which a

district court conducted a good faith inquiry into the nature of the alleged conflict or breakdown in the attorney-client relationship. *See United States v. John Doe No. 1*, 272 F.3d 116, 124 (2d Cir. 2001) (district court should engage in inquiry that is "not merely a perfunctory, superficial inquiry … but instead … an inquiry detailed enough for the court to determine that substitution [i]s unwarranted"). I did so here. Following the filing of Attorney Buckley's motion to withdraw, I promptly scheduled an in-court hearing to listen to the concerns of Attorney Buckley and Walters. I afforded Attorney Buckley and Walters a full opportunity to explain the background circumstances. At the end of the hearing, I asked Attorney Buckley and Walters whether there was anything further either of them wanted me to consider, and each of them indicated that they had nothing to add.

### *Communication breakdown and the defendant's contributory conduct*

With respect to the third and fourth factors, I consider whether there is a total lack of communication between Walters and Attorney Buckley and whether Walters' own conduct has contributed to the communication breakdown. "When counsel carries out his or her professional duties, files appropriate motions, … and meets with the defendant, the existing strife between them is likely not so great as [to] constitute … a 'total lack of communication' preventing an adequate defense." *United States v. Rowell*, 2010 WL 3582379, at *6 (D. Conn. 2010), *aff'd,* 457 F. App'x 49 (2d Cir. 2012). Moreover, if the defendant's conduct "has contributed in part to the poor relationship, the deficits in communications do not warrant substituting counsel." *Ibid*.

Notwithstanding the claim that Walters does not trust the advice of Attorney Buckley, a motion to withdraw and substitute new counsel is not "determined solely according to the subjective standard of what the defendant perceives," for "[w]hile loss of trust is certainly a factor in assessing good cause, a defendant seeking substitution of assigned counsel must

9

nevertheless afford the court with legitimate reasons for the lack of confidence." *McKee*, 649 F.2d at 932. There are no legitimate reasons here.

As I learned at the hearing, Walters primarily faults Attorney Buckley for failing to file substantive motions that he wanted her to file. But I was told the details of only one such motion. In order to avoid any possible compromise of Walter's trial defense, I will not detail his description of that motion. Suffice it to say, however, that Walters wanted Attorney Buckley to file a motion that would have invited me to engage in a pre-trial review and assessment of whether the prosecution's evidence was strong enough to sustain the charges against him. But as any reasonably competent attorney knows, I cannot do that. *See United States v. Rankin*, 422 F. Supp. 3d 564, 578 (D. Conn. 2019). I have no doubt that Attorney Buckley had sound reasons to decline to file this motion, not only because of its futility but also because it would needlessly reveal and likely compromise a potential defense for Walters at trial.

Both Attorney Buckley and Walters had every opportunity at the hearing to tell me about additional motions Walters wanted to file. They did not do so. Attorney Buckley maintained, however, that she did not believe that the filing of these unspecified motions was warranted and that she did not render ineffective assistance of counsel by declining to file them. I have not the slightest reason to conclude that Attorney Buckley should have filed any of the unspecified motions that Walters wanted her to file.

"A counseled defendant … has no automatic right to insist that his lawyer make motions that he would prefer be made, to make supplementary pro se motions when his attorney declines to make them, or to insist on new counsel whenever he and his attorney differ on strategy." *United States v. Rivernider*, 828 F.3d 91, 107 (2d Cir. 2016). Moreover, a defense attorney "is

10

not required to agree with [her client's] assessment of [his] legal claims, and, in fact, may be obligated to disagree." *Nicolescu v. United States*, 2019 WL 5092247, at *3 (D. Conn. 2019).

Accordingly, a court is not required to grant an attorney's motion to withdraw that is premised on a breakdown in attorney-client communication due to the attorney's refusal to file meritless motions on a criminal defendant's behalf. *See United States v. Hall*, 2021 WL 54169, at *11–12 (D. Conn. 2021). Indeed, I have no reason to think that any newly appointed counsel would take a different view than Attorney Buckley about whether to file Walters' requested motions. So if I were to grant the motion to appoint new counsel, it is likely that some months from now another motion to withdraw would be forthcoming, after Walters disagreed with his new counsel's decision not to file meritless motions on his behalf.

More generally, the record does not remotely suggest that Attorney Buckley—who has vast experience as a criminal defense attorney—has rendered ineffective assistance.[31] To the contrary, the record shows that she aggressively litigated the motion to suppress, opposed pre-trial detention, and then later sought reconsideration of the order of pre-trial detention notwithstanding an uphill battle because of the nature of the charged crimes and Walters' extensive criminal history including crimes of violence.[32] All signs indicate that Attorney Buckley has been a zealous advocate on Walters' behalf, consistent with the usual standards of the Office of the Federal Public Defender.

---

[31] Attorney Buckley's biographical profile on the webpage of the Office of Federal Public Defender reflects that she has 25 years of experience in criminal defense law and has previously served as president of the Connecticut Criminal Defense Lawyers Association as well as serving as Chair of the Connecticut Bar Association's Criminal Justice Section. *See* Office of the Federal Public Defender, District of Connecticut – Moira Buckley, available at https://ct fd.org/buckley-moira.

[32] Doc. #22 (motion to suppress); Doc. #9 (order of detention listing reasons for detention); Doc. #34 (motion for reconsideration of detention). The indictment alleges that Walters has five prior felony crimes: burglary, robbery, assault, unlawful restraint, and failure to appear. Doc. #10 at 2.

Walters also complained at the hearing that Attorney Buckley had not been in as frequent communication with him as he thought she should. But the docket filings in this case (as described above) show that Attorney Buckley has very frequently communicated with Walters throughout the nearly two-year odyssey of this case, and the motion to withdraw itself describes Attorney Buckley's in-person visit with Walters three weeks before trial on March 16, 2022. The record does not show that Attorney Buckley has neglected Walters or that she will not be prepared for trial (especially with the assistance of co-counsel who has recently filed an appearance). The fact that Walters may not be satisfied with how often Attorney Buckley has been in touch with him does not justify his failure to communicate and cooperate with her in his defense.

Nor does Attorney Buckley have any ethical conflict of interest that would require me to grant the motion to withdraw. A conflict of interest exists if there is a significant risk that an attorney's representation of the client will be materially limited by the attorney's self-interest. *See* Conn. R. Prof. Cond. 1.7(a)(2). Notwithstanding the fact that Walters has unwarranted complaints about her performance, the record shows nothing to suggest that Attorney Buckley will be compromised by any personal self-interest in continued representation of Walters for trial. *See United States v. O'Connor*, 650 F.3d 839, 851–52 (2d Cir. 2011) (affirming denial of defense counsel's motion to withdraw in absence of evidence that continued representation would violate ethical rules of conduct or subject the attorney to sanction).

I will deny the motion to withdraw. The motion is untimely. And the record does not show legitimate reasons for Walters to distrust or fail to communicate with Attorney Buckley. Yes, there may be hard feelings between Walters and Attorney Buckley. But the Sixth Amendment guarantees *effective* representation—not "rapport" or "a meaningful relationship

between the defendant and his counsel." *John Doe No. 1,* 272 F.3d at 122. When I consider that Walters has no legitimate reason to fail to cooperate with Attorney Buckley, as well as the months-long delay of trial that would ensue if I appointed new counsel, I conclude that the interests of justice weigh strongly against granting the motion to withdraw.

## CONCLUSION

For the reasons stated above, the Court DENIES the motion to withdraw (Doc. #63).

It is so ordered.

Dated at New Haven this 25th day of March 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge