## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:20-cr-89 (JAM) |
| NEVILLE WALTERS, *Defendant*. | |

### OMNIBUS ORDER ON PRETRIAL MOTIONS

The investigation of defendant Neville Walters began with the monitoring of an Instagram account and suspected illegal activity at his residence in Bristol, Connecticut.[1] The police eventually executed a search warrant at the residence on May 12, 2020. *See United States v. Walters*, 2021 WL 869686, at *2 (D. Conn. 2021) (denying motion to suppress).

Among the items found during the execution of the search warrant were two firearms and narcotics that now serve as the basis for three federal criminal charges against Walters: (1) possession with intent to distribute fentanyl and marijuana (21 U.S.C. § 841); (2) unlawful possession of a firearm by a convicted felon (18 U.S.C. § 922(g)); and (3) possession of two firearms in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)).

Walters has pleaded not guilty to all three charges. The Court selected a jury last week, and this ruling addresses the parties' pre-trial motions in anticipation of trial evidence to begin next week.

### *Walters' motion to proceed pro se to file pre-trial motions (Doc. #76)*

Walters has moved to proceed *pro se* for the purpose of filing pre-trial motions. A court has discretion to allow a criminal defendant to file motions on his behalf, even if he is represented by counsel. *See United States v. Rivernider*, 828 F.3d 91, 108 & n.5 (2d Cir. 2016)

---

[1] Doc. #1-1 (affidavit of ATF Special Agent Eric Ladyga in support of criminal complaint and warrant); Doc. #24 (Bristol Police Officer Zachary Levine's affidavit and application for a search warrant).

(noting that a district court has discretion to consider such motions although a defendant does not have a constitutional right to file them). After having heard from Walters and his counsel about the reasons why Walters wishes to do so, I am persuaded that the best course is to allow Walters to file pre-trial motions on his own behalf in order to make arguments that he very strongly believes should be made but that his counsel does not believe should be asserted by way of a pre-trial motion. Accordingly, I will grant Walters' motion to proceed *pro se* for the limited purpose of filing pre-trial motions.

### Walters' pro se motion in limine to dismiss the third count of the indictment charging him with possession of a firearm in furtherance of a drug trafficking crime (Doc. #77)

Walters moves *pro se* to dismiss Count Three of the indictment which charges that he knowingly possessed two firearms in furtherance of a drug trafficking crime on or about May 12, 2020. Walters argues that he cannot be guilty of this crime because he asserts that he was asleep in his residence on May 12, 2020 when the police arrived to execute the search warrant and that he could not have knowingly possessed the firearms while sleeping, much less possessed the firearms in furtherance of any drug trafficking.

It is a basic rule of federal criminal practice that a defendant may not procure the pre-trial dismissal of an indictment because he believes that the prosecution will not be able to prove its case at trial. *See Costello v. United States*, 350 U.S. 359, 363–64 (1956); *United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021); *United States v. Sampson*, 898 F.3d 270, 280–81 (2d Cir. 2018). Instead, a defendant must wait until trial to challenge the sufficiency of the evidence, at which time he may move for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(a) after the prosecution completes its presentation of evidence and rests its case.

To be sure, there is an exception to this rule when the prosecution elects to make a full pre-trial proffer of the evidence it intends to present at trial, but this exception is "extraordinarily

narrow." *Sampson*, 898 F.3d at 282.[2] The prosecution here has not made a full proffer of its trial evidence, much less consented to any pre-trial review of the sufficiency of its evidence. Therefore, at this time I cannot evaluate the merits of Walters' claim that he did not knowingly possess a firearm in furtherance of any drug trafficking crime. I will deny Walters' motion to dismiss Count Three but without prejudice to Walters' moving for a judgment of acquittal at the close of the prosecution's case-in-chief at trial.[3]

### Walters' motion to bifurcate trial (Doc. #80)

Walters moves to bifurcate the trial so that Count Two—alleging unlawful possession of a firearm by a convicted felon—will be presented to the jury in a separate verdict form only after they reach a verdict on the other two counts. I will grant this motion absent objection on the ground that it will prevent any unfair prejudice that might result from the jury's learning of Walters' criminal history when considering the evidence with respect to the other charges.

### Walters' motion for attorney-conducted voir dire questions on implicit bias (Doc. #82)

Walters moves to permit counsel to question prospective jurors regarding implicit bias. Since this motion was filed, the parties have selected a jury. I declined to allow defense counsel to conduct individual questioning of jurors with the very specific and numerous questions that Walters' counsel suggested, because I do not ordinarily permit extended individual *voir dire* at jury selection, because some of the questions (such as about the confederate flag and critical race theory) were inflammatory, and because the long list of questions posed would likely have consumed a very large amount of time at jury selection. Instead, I took numerous other steps to alert jurors to the potential for implicit bias and to allow defense counsel to gauge from the

---

[2] For purposes of readability, my quotations from court decisions in this ruling omit internal citations, quotation marks, and bracketing unless otherwise noted.
[3] Walters has filed a separate *pro se* motion to dismiss (Doc. #105) that I will not address until he has an opportunity to file a reply to the Government's opposition to this motion.

jurors' responses the likelihood that a particular juror might be biased against Walters. At jury orientation, all the jurors watched a video about implicit bias.[4] During my group questioning of jurors, I asked whether any jurors would refuse to recognize the possibility of implicit bias. And during individual questioning of jurors, I asked each juror what the term "implicit bias" meant to them. Accordingly, I have denied Walters' motion for attorney-conducted *voir dire* questions on the subject of implicit bias in light of the alternative measures taken.

### Government's notice of intent to offer evidence re stimulus payments (Doc. #92)

The Government has filed a notice of its intent to adduce evidence from judicially noticeable records that as of May 2020 the United States Department of Treasury had paid COVID-19-related stimulus checks of $1,200 to single individuals. This evidence is relevant to rebut Walters' alleged claim at the time of his arrest on May 12, 2020 that the large amount of cash found on his person ($2,827) was from a stimulus check. Unless Walters chooses to stipulate to the fact that only $1,200 in stimulus money had been paid to individuals as of May 2020, I will allow the Government to elicit this fact from one of its witnesses, provided that the witness identifies a judicially noticeable public record source as the basis for the testimony.

### Government's motion to admit 404(b) evidence from Instagram (Doc. #93A-B)

The Government seeks to introduce a large number of videos and photos from the coke805 Instagram account that the Government contends was controlled by Walters. The Government's motion (Doc. #93) includes sub-headings for "A. Images and videos of other firearms" which includes Exhibits 69A, 69B, 70, 72, 96, 97, 99, 100, 102, and 103, and for "B. Images and videos of drug trafficking" which includes Exhibits 69A, 69B, 70, 71, 79-85, 87, 88,

---

[4] The panel watched the video that is posted to the website of the U.S. District Court for the Western District of Washington: https://www.wawd.uscourts.gov/jury/unconscious-bias.

90, 91, and 93. At oral argument, Walters raised additional objections to Exhibits 75, 95, and 105.

These images were posted to the account in the months and weeks leading up to the search of Walters' residence on May 12, 2020. Some of the images appear to show Walters' face and his body or hands as evidenced by tattoo markings. Many of the images appear to show firearms, marijuana, and large amounts of cash. Walters objects to these exhibits on grounds of authentication, hearsay, relevance, and unfair prejudice.

As to Walters' authentication objection, I will await the Government's laying of a foundation for authentication at trial. *See* Fed. R. Evid. 901. The Second Circuit has made clear that "the bar for authentication of evidence is not particularly high," and "the proponent need not rule out all possibilities inconsistent with authenticity," but need only adduce "sufficient proof so that a reasonable juror could find in favor of authenticity or identification." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014). And, of course, once an item of evidence is "authenticated" as required under Rule 901, this "merely renders evidence admissible, leaving the issue of its ultimate reliability to the jury," while "the opposing party remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning," with all such challenges going to the weight of the evidence rather than its initial admissibility. *Id.* at 131; *United States v. Oreckinto*, 234 F. Supp. 3d 360, 364–65 (D. Conn. 2017) (discussing authentication requirements).

As to Walters' hearsay objection, this overlooks that the postings to the Instagram account are offered as non-hearsay statements of a party opponent pursuant to Fed. R. Evid. 801(d)(2)(A). I am satisfied from the numerous postings that show Walters that the accompanying statements are admissible as party opponent statements to the extent that they are

even offered for their truth rather than for any non-hearsay purpose. Walters will be free to contest at trial whether any such statements are properly attributable to him rather than some other person who may have controlled or contributed to the Instagram account. Alternatively, it does not appear that Walters has any grounds to dispute the admissibility of Facebook records under the business records exception to the hearsay rule (Fed. R. Evid. 803(6)).

As to Walters' relevance and prejudice objections, evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed R. Evid. 402. In addition, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). On the other hand, such evidence of "other acts" of a defendant "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Second Circuit follows what it has described as an "inclusionary approach" to allow the admission of "'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." *United States v. Moran-Toala*, 726 F.3d 334, 345 (2d Cir. 2013). The factors relevant to determining the admissibility of "other act" evidence include whether (1) the

6

evidence is offered for a proper purpose, (2) the evidence is relevant to a disputed issue pursuant to Rule 402, (3) the probative value of the evidence is substantially outweighed by its potential for unfair prejudice pursuant to Rule 403, and (4) the evidence was admitted in conjunction with an appropriate limiting instruction, if requested. *Ibid.*; *see also United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) (same).

More recently, the Second Circuit has cautioned that "a district court may not freely admit evidence of conduct simply because it relates to the charged crimes or the government offers it for a purpose other than to demonstrate the defendant's propensity to commit the alleged conduct." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022). It has cautioned that "[o]ur inclusionary rule is not a carte blanche to admit prejudicial extrinsic act evidence that is offered to prove propensity, or otherwise to allow propensity evidence in sheep's clothing." *Ibid.*

"Additionally, the rule permits the government to offer 'other act' evidence to show knowledge or intent only when such evidence is sufficiently similar to the conduct at issue to permit the jury to draw a reasonable inference of knowledge or intent from the other act." *Ibid.* "If necessary, the government may introduce evidence of uncharged criminal conduct to complete the story of the crime on trial, not to tell a new one" involving a "grimmer narrative" or "conduct more inflammatory than the charged crime." *Id*. at 552–53.

In light of these standards, I will grant in part and deny in part the Government's motion to admit Instagram images and related data. My ruling principally turns on what I understand to be the key issues of fact for the jury to decide at trial: whether Walters' *knowingly* constructively possessed the narcotics and firearms that were found during the search of his residence at 110 Prospect Street in Bristol, Connecticut on May 12, 2020 and, if so, whether he possessed the

narcotics—including marijuana—with *intent* to distribute and whether he possessed the firearms *in furtherance* of the charged crime of possession with intent to distribute narcotics.

The proffered images from what the Government claims is Walters' Instagram account are highly relevant to the issues of knowledge and intent that are at the heart of this case. They are not unfairly prejudicial nor are they offered for an improper character or propensity purpose.

Indeed, because there were as many as seven persons who resided at 110 Prospect Street where the narcotics and two firearms were found, the Instagram images are particularly probative with respect to the Government's effort to link the seized items to Walters rather than to others who lived or visited there. If Walters requests, I will issue a limiting instruction regarding the jury's consideration of any of the Instagram images to ensure that they do not consider them as improper character or propensity evidence and that they strictly limit their consideration of the evidence to the issues of what Walters knew and intended on or about May 12, 2020.

In light of these general findings, I now turn to address on an exhibit-by-exhibit basis the admissibility of images from the Instagram account. I do so in light of the controlling legal standards as set forth above. To the extent that I find any particular image to be admissible, I have concluded that it is offered for a proper purpose, that it is relevant and not unfairly prejudicial, and that I will issue a limiting instruction upon request. If either party believes that I have misunderstood some aspect of any particular exhibit or not addressed an objection or concern that they have, they are invited to call this promptly to my attention for reconsideration.

### *Exhibits 69A & 69B (scrolling videos of Instagram account)*

Exhibits 69A and 69B are videos showing the publicly visible contents of the coke805 Instagram account as they would appear to an individual "scrolling" through the account in reverse chronological order beginning in May 2020 and ending in December 2019. The first

video (Ex. 69A) shows grid tiles representing posted pictures and videos, while the second video (Ex. 69B) shows the contents of those posts including videos that appear to play automatically as the viewer scrolls through the account.

As to both exhibits, I conclude that not each and every image shown is relevant. Some images do not feature Walters at all, others do not relate to the crimes charged in this case, and at least one appears to show another unidentified individual. Otherwise, to the extent that some of the images are the same as other images that the Government plans to separately introduce as exhibits (and which I will admit as discussed below), then these scrolling videos are needlessly cumulative. The potential for unfair prejudice is magnified to the extent that some of the images revealed by the scrolling videos are more indicative of Walters' personal lifestyle than anything that is genuinely and non-cumulatively probative of the issues in this case.

The Government argues that Exhibits 69A and 69B are necessary for the Government to demonstrate from a holistic review of the entire Instagram account that Walters controlled the account (and hence to attribute particular images as discussed below to Walters). It is not so clear to me, however, that Walters intends to meaningfully contest his control of the account. If this issue arises as a genuine dispute at trial, the Government may seek reconsideration of the admissibility of the scrolling videos.

### *Exhibits 70 and 71 (thumbnail images of recent Instagram posts)*

Exhibits 70 and 71 are screenshots of the coke805 account's profile picture and thumbnail images of certain postings. For purposes of attribution of the account to Walters, I will permit the Government to offer a redacted version of Exhibit 71 to show the profile image which the Government contends is one of Walters' tattoos. Otherwise, the rest of the thumbnails on

these two exhibits appear to be not relevant or wholly cumulative of other images that I will separately allow the Government to introduce (as discussed below).

*Exhibits 72 and 100 (images of uncharged gun with high-capacity magazine)*

These exhibits show a photograph of a gun the Government has not been able to identify loaded with a protruding high-capacity magazine.[5] The photo in both exhibits was posted to the coke805 Instagram account on May 5, 2020—just one week before the search of the residence. I will admit these exhibits because the Second Circuit has ruled that, in a case involving a charge of unlawful possession of a firearm, it is proper Rule 404(b) evidence for the prosecution to show that the defendant possessed other uncharged firearms because this makes it more likely that the charged firearm belonged to the defendant and that its presence in the defendant's apartment was not a mistake or accident. *See United States v. Brown*, 961 F.2d 1039, 1042 (2d Cir. 1992) (*per curiam*) (affirming admission of evidence of other uncharged firearms that were found in the defendant's apartment and in his vehicle in light of the defendant's "contention that the access of others to [his] apartment might account for the presence of the Uzi there," because the presence of these other firearms "made it more likely that the Uzi belonged to him" rather than someone else); *United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) (noting that "[t]he government was required to prove that Cassell knowingly possessed the firearms found in his room" and "[t]he fact that Cassell had previously possessed weapons tends to make it less probable that the weapons recovered from his bedroom were there without his knowledge, without intent, or by accident or mistake"); *United States v. Cisneros-Legarda*, 2022 WL 110594, at *2 (D.N.M. 2022) (admitting "screenshots and recorded clips of Facebook Live

---

[5] Some of the Instagram images to be offered by the Government are the same image but from two different sources—one from an agent's direct access over the internet to the Instagram account and the other from a subpoena to Facebook for the account images and related metadata. I think it is proper for the Government to dually establish the authenticity of the images in this manner.

videos that Defendant purportedly filmed of himself in possession of firearms and large amounts of United States currency in the weeks leading to the search of his home").

Moreover, beyond the relevance of this evidence to whether Walters knowingly possessed the two charged firearms, it is relevant as well to the separate charge of whether he possessed the two firearms in furtherance of drug trafficking activity. Because these images were posted on Instagram, a jury could consider this as evidence that Walters intended to advertise his possession of firearms in order to protect his drug trafficking activity. A violation of 18 U.S.C. § 924(c) requires proof that the possession of a charged firearm "afforded some advantage (actual or potential, real or contingent) to the drug trafficking," including "where the charged weapon is readily accessible to protect drugs, drug proceeds, or the dealer himself." *United States v. Willis*, 14 F.4th 170, 184 (2d Cir. 2021).

The probative value of Walters' possession of uncharged firearms is not substantially outweighed by any danger of unfair prejudice. To the extent that the images may be prejudicial because they suggest prior criminal conduct by Walters, the Second Circuit has recently noted that "[w]e have approved the admission of uncharged crimes when the uncharged crimes did not involve conduct more inflammatory than the charged crime." *Zhong*, 26 F. 4th at 553. Put differently, "[t]he probative value of prior bad-act evidence is not substantially outweighed by the risk of prejudice if the conduct is not any more sensational or disturbing than the charged crime." *United States v. Rosemound*, 958 F.3d 111, 125 (2d Cir. 2020). Here, the image of any uncharged firearms is no more inflammatory than images of the charged firearms.

*Exhibits 75 and 92 (images of Walters pointing gun at camera with caption)*

Exhibits 75 and 92 show the same image of Walters pointing a handgun directly into the camera as posted to the Instagram account on April 27, 2020—slightly more than two weeks

before the search of his residence. The Government claims that the handgun that Walters is

holding is one of the charged firearms. The caption accompanying this image says: "I stay gee'd

up."

I conclude that this image is very clearly relevant to the Government's claim of Walters'

knowing constructive possession on May 12, 2020 of one of the firearms charged in the

indictment. "Where knowledge and intent are in dispute, both generally and specifically, with

respect to constructive possession, evidence of prior acts is admissible to prove knowledge or

intent." *United States v. Toliver*, 283 F. App'x 869, 871 (2d Cir. 2008) (affirming admission of

evidence that defendant was observed holding a gun about 30 days before the traffic stop at issue

for the purpose of showing his knowledge and intent to possess a similar gun found in his car

during the traffic stop).

And, as discussed above for Exhibits 72 and 100, to the extent that the image shows

Walters engaged in a menacing act with the firearm which was posted to Instagram for others to

see, it supports the Government's contention that he possessed this specific firearm in

furtherance of drug trafficking activity. The caption ("I stay gee'd up") is also suggestive of an

intent to protect by warning and intimidation. The compelling probative value of these images

and caption is not substantially outweighed by any danger of unfair prejudice.

### *Exhibits 79, 80, 81, 82, 83, 87, 88, 90, 91, 93 (photo carousels with marijuana images)*

This group of exhibits mostly includes linked series of photographs (called "carousels")

posted on the coke805 account from December 2019 to April 2020. Although some of the

postings are from several months prior to May 2020, I conclude that each of the images is

nonetheless relevant, offered for a proper purpose, and has probative value that is not

substantially outweighed by any danger of unfair prejudice. *See United States v. Bright*, 2022

WL 53621 at *3 (2d Cir. 2022) (noting that "we recognize no bright-line rule as to how old is too old—rather, we evaluate admission on a case-by-case basis, weighing all evidence for relevance and reliability").

Many of the images in this group show chunks of apparent marijuana. To the extent that the jury credits the Government's evidence that Walters posted these images to the account, these images tend to show that the marijuana that was later found during the search of the apartment on May 12, 2020 was knowingly possessed by Walters rather than by some other person. *See United States v. Paulino*, 445 F.3d 211, 220–23 (2d Cir. 2006) (affirming admission of prior conviction for the sale of cocaine in 2000 to show that it was the defendant rather than one of his family members who constructively possessed cocaine found in his bedroom closet in 2003); *see also United States v. Nyenekor*, 784 F. App'x 810, 815 (2d Cir. 2019) (defendant's guilty plea colloquy from a conviction four years earlier was properly admitted "for the purpose of showing [his] knowledge of drug selling and his intent to engage in it").

Moreover, because of the posting of these images to Instagram in a manner consistent with an apparent intent to advertise, they are relevant as well to the Government's contention that Walters knowingly possessed the marijuana on May 12, 2020 with intent to distribute it rather than solely for personal use. This inference is consistent with brand-style headings that appear on some of the marijuana images such as "Mc Jagger shit" (Ex. 80), "Winnie world" (Ex. 81), "Obamacare" (Ex. 82), "pineapple express on God" (Ex. 87), "MOB" (Ex. 88), and "Golden Leaf" (Ex. 91).

This inference is also consistent with additional images of cash and a digital scale (Ex. 79). Various captions—such as "Bag money both ways" for a selfie-photo showing Walters holding a wad of cash (Ex. 80) and "Yu don no sey mon ah ganjah baby" for photos showing

another stack of bills and a pile of marijuana (Ex. 90) and "Idgaf" for a photo showing large amounts of cash splayed across a flat surface (Ex. 93)—are all relevant to the disputed issue of whether Walters possessed marijuana at his residence and used it to engage in illicit and profitable narcotics transactions that continued to May 12, 2020. *See Paulino*, 445 F.3d at 222 ("[B]ecause the act disputed by Paulino was his *constructive* possession of the cocaine in his closet, he necessarily raised questions as to his knowledge and intent.").

Some of the carousel images merely show Walters himself—whether they show his face or show other parts of his body that bear tattoos. These images are derivatively relevant to showing that it was Walters—rather than someone else—who posted the images of marijuana on the Instagram account and hence who knowingly possessed the marijuana found during the search of the residence on May 12, 2020. The fact that one of the images shows Walters holding a plastic multi-colored toy gun (Ex. 79) is not unfairly prejudicial because it is apparent that this is nothing more than a toy gun.

### *Exhibits 84 and 85 (Purple platinum" video of January 2020)*

Exhibit 84 shows that a user named "Christopher coke" posted a number of media files to the coke805 account accompanied by various captions. The Government stated at the pre-trial conference that it intends to use this exhibit to show how its agent linked various media files produced by Instagram as business records to the text comments made by the account user. Primarily, the Government proffered that it intends to show that the coke805 user posted the video shown in Exhibit 85 along with the text "Purple platinum" on January 29, 2020. This is a 28-second video that shows a close up of numerous chunks of apparent marijuana inside a clear plastic bag. The Government intends to identify Walters with the voice in the video describing the pictured marijuana as "purple platinum" and advertising that he "got it for a nice price" and

to "holla atcha boy." I will admit Exhibit 84 as proper authentication evidence and Exhibit 85 as relevant to the issues of Walters' knowing possession with intent to distribute of the marijuana that was later found at the Prospect Street residence on May 12, 2020. The evidence is offered for a proper relevant purpose and is not substantially outweighed by the danger of any unfair prejudice.

_Exhibits 96, 97, 99, 100, 102, 103_: _Images of Walters with uncharged firearms_

The next group of exhibits are Instagram photographs and videos of Walters holding various uncharged firearms that were posted to the coke805 Instagram account between April 28, 2020 and May 7, 2020:

- Exhibits 96 and 97 show Walters in what the Government contends is the kitchen of the Prospect Street residence holding what appears to be a firearm with an activated laser sight and pointing it at the camera while making a hand-sign and displaying large wads of cash bulging from both front pants pockets.
- Exhibit 99 is a 3-second video of someone holding and turning a firearm (not one of those charged in the indictment) in his right hand, with hand tattoos that appear to match those on Walters' right hand and with the sounds of two male voices in the background.
- Exhibit 102 is a 16-second video of three guns (one of which may be the charged Glock firearm) near the foot of an unidentified individual on what is alleged to be the floor of the Prospect Street residence and with music playing in the background.
- Exhibit 103 shows a small firearm with a laser sight in the left hand of an individual with tattoo markings on the wrist that appear similar to those on Walters' left wrist.

Walters argues that this evidence is inadmissible character evidence because it does not show him holding either of the charged firearms and to the extent it shows him knowingly possessing other uncharged firearms, the inference of such knowing possession cannot be extrapolated to the charged firearms at the later date of May 12, 2020 because the photographs were posted one to two weeks before that date and may in fact have been taken at an earlier date.

But for the reasons I have set forth above for Exhibits 72 and 100 and consistent with *United States v. Brown*, *supra*, I conclude that these images are relevant, offered for a proper purpose, and that their probative value is not substantially outweighed by any danger of unfair prejudice.[6]

### Exhibit 105 (video of both charged guns)

Exhibit 105 is a 15-second video which the Government claims was posted on May 8, 2020 and shows Walters' tattooed hand displaying two firearms that the Government claims are those alleged in the indictment. For the reasons set forth above, I conclude that this video is offered for a proper purpose and relevant to Walters' knowledge and intent on May 12, 2020, and its probative value is not substantially outweighed by any danger of prejudice. *See Toliver*, 283 F. App'x at 871. Although Walters argues that the video itself is undated, the relevant date is its posting just a few days before the search of the Prospect Street residence on May 12, 2020.

### Government's motion re DOC tattoo photos (Doc. #93C)

Exhibit 113 is a series of photos taken by the Connecticut Department of Correction soon after Walters' arrest on May 12, 2020 and showing numerous parts of Walters' body bearing tattoos. It does not appear to me that all of the photos are relevant, and it is unclear why the Government should not limit the photos to those that it can show are necessary to link Walters to

---

[6] Walters relies on *United States v. Irving*, 2022 WL 281547 (S.D. Ind. 2022), a recent case in which a court precluded similar Instagram images showing a defendant with narcotics, guns, and cash within a few weeks of the date he was alleged to have possessed a firearm in furtherance of a drug trafficking crime. The case is distinguishable because, unlike Walters' case, the defendant in *Irving* did not dispute that he possessed the firearm in question and that he possessed controlled substances with intent to distribute; he disputed only whether he possessed the firearm in furtherance of a drug trafficking crime. In any event, I am not persuaded by the *Irving* court's reasoning that "it simply is not relevant that [the defendant] possessed drugs and a gun one month or even a few days earlier than the charged crimes." *Id.* at *2. For the reasons I have explained above, I conclude that the fact that Walters possessed firearms and marijuana near in time to the charged date of the offense tends to make it more probable that he—rather than any other person at the residence—knowingly possessed the narcotics and firearms that were found and also that he possessed the two firearms that were found in furtherance of the charged narcotics trafficking crime. *See Toliver*, 283 F. App'x at 871.

particular Instagram images. Accordingly, I will defer ruling on the admissibility of this exhibit pending the further views of the parties.

### Government's motion re testimony of state probation officer (Doc. #93D)

The Government intends to call Walters' state probation officer to testify as to his address and primary phone number. Because testimony by Walters' former probation officer would necessarily alert the jury to his past criminal activity, I will defer ruling on this testimony until I can determine whether the Government has any less prejudicial means of identifying Walters' address and primary phone number.

### Government's motion re evidence that firearm was stolen (Doc. #93E)

The Government seeks to present evidence that one of the charged firearms was recently stolen. This evidence is relevant because one of the factors for the jury to consider in determining whether Walters possessed a firearm in furtherance of a drug trafficking crime is "whether the weapon is stolen." *Paulino v. United States*, 2020 WL 2062192, at *5 (D. Conn. 2020) (quoting *United States v. Chavez*, 549 F.3d 119, 130 (2d Cir. 2008)); *see also United States v. Black*, 845 F. App'x 42 (2d Cir.) (affirming the continuing validity of this factor among others), *cert. denied sub nom. Pettway v. United States*, 142 S. Ct. 622 (2021). I will therefore permit the introduction of this evidence on the condition that the Government elicits from its witness (as it has offered to do) that Walters was not implicated in the theft.

### Walters' motion to preclude expert witness testimony of Agent Gordon (Doc. #95)

Walters seeks to exclude or limit the proposed expert witness testimony of FBI Special Agent Sean Gordon regarding the preparation, packaging, marketing, terminology, and distribution of narcotics, as well as the propensity of drug dealers to possess firearms. I will deny

the motion as to testimony about narcotics distribution practices but conditionally grant the motion as to the use of firearms.[7]

The Federal Rules of Evidence provide that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. "Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own." *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008).

As to Agent Gordon's testimony about the preparation, packaging, marketing, terminology, and distribution of narcotics such as fentanyl and marijuana, I conclude that this subject matter is specialized and beyond the ken of the average juror and that it will be useful for the jury to understand when evaluating whether the evidence found at 110 Prospect Street indicates the distribution of fentanyl and marijuana rather than its storage merely for personal use. *See, e.g. United States v. Reddick*, 284 F. Supp. 3d 159, 161–62 (D. Conn. 2018).

On the other hand, as to Agent Gordon's testimony about the common use of firearms by drug traffickers, I am not convinced that this subject is beyond the ken of the average juror and that such testimony would not be unfairly prejudicial. "I have no doubt that firearms are tools of the drug trade," but "[f]or an expert to come in to state the obvious about guns and drug dealing going together not only exceeds the permissible limits of expert testimony but also comes with some unfair risk that the jury will conclude largely because of the expert's imprimatur that the gun at issue here must have had something to do with drug dealing." *Id.* at 162–63. "It is one thing for an expert to testify based on specialized knowledge about narcotics packaging materials

---

[7] Agent Gordon had nothing to do with the investigation of this case, and the Government does not propose to offer him in part as a fact witness or to ask him to comment on evidence or images from the search warrant and the Instagram account.

and quite another for an expert to testify that drug dealers are commonly or usually gun criminals as well." *Id.* at 163.

Therefore, I will not allow Agent Gordon to testify that drug traffickers commonly possess firearms. Nevertheless, I will permit the Government to elicit testimony from Agent Gordon about whether drug trafficking is dangerous, in part because of the risk of theft or robbery by a rival or customer. And if there is a foundation laid for the conclusion that drug trafficking is dangerous, then "the Government is free to argue during closing statements the common sense reasons why someone who is engaged in unlawful narcotics trafficking may decide to possess a firearm for protection." *Id.* at 163–64.

### Walters' motion to exclude Government witnesses and require case agent to testify first (Doc. #96)

I will grant the unopposed portion of Walters' motion to sequester all witnesses other than the Government's case agent, ATF Special Agent Eric Ladyga, and to instruct those witnesses not to discuss the case or their testimony with anyone other than counsel.

I will deny the motion with respect to requiring Agent Ladyga to testify first. Walters has not shown any basis for concluding that allowing Agent Ladyga to hear other witnesses' testimony before taking the stand presents a risk of "fabrication, inaccuracy, and collusion." *United States v. Jackson*, 60 F.3d 128, 134 (2d Cir. 1995) (quoting Fed. R. Evid. 615, Advisory Committee notes). While Rule 615 requires the sequestration of other witnesses, it exempts the Government's representative—here, Agent Ladyga—and "it is well settled that such an exemption is proper under Rule 615[b]." *United States v. Lee*, 834 F.3d 145, 162 (2d Cir. 2016).

### Walters' motion to preclude references to "Christopher Coke" (Doc. #97)

Walters moves to preclude evidence of the use of the name "Christopher Coke" as the registrant for the coke805 Instagram account. I will deny this motion. Because images from the

Instagram account will be admitted at trial, it is proper for the Government to introduce evidence about the name of the account as well as the name used as the putative owner of the account. It is also relevant to the jury's consideration of Walters' connection to the account. Although Walters complains that there was an infamous criminal named "Christopher Coke" in news stories about ten years ago, the Government does not intend to introduce any evidence about this person. Nor am I convinced that the jury is likely to know about this person or, if so, to draw an unfairly prejudicial connection between this person and Walters. Of course, if the jury is convinced that it was Walters himself who chose the name Christopher Coke for an account that he used to promote narcotics distribution, it is hard to see how any prejudice to Walters would be unfair.

### *Walters' motion to preclude expert witness testimony of Agent Oppenheim (Doc. #99)*

Walters seeks to exclude testimony from ATF Special Agent Michael Oppenheim regarding the interstate travel of the charged firearms. I will deny this aspect of the motion because it is well established that interstate travel of a firearm may be proved by means of expert testimony from a law enforcement agent. *See, e.g., United States v. Nazario*, 374 F. App'x 63, 67 (2d Cir. 2010); *United States v. Johnson*, 192 F. App'x 43, 45 (2d Cir. 2006).

Walters also seeks to preclude Agent Oppenheim from testifying about regulations governing the permitting of firearms and ammunition. I will deny this aspect of the motion, provided that the Government adduces evidence that Walters did not have a permit to possess the firearms. When the jury considers whether Walters possessed the firearms in furtherance of narcotics trafficking, it is appropriate for the jury to consider whether there are lawful alternative reasons why he may have possessed the firearms. *See United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005). Among the many factors that a jury may consider for purposes of deciding if a firearm was possessed in furtherance of drug trafficking activity is "the status of the possession (legitimate or illegal)" of the firearm. *Chavez*, 549 F.3d at 130. Testimony about whether Walters

possessed a permit and expert testimony about permitting requirements is appropriate to the jury's consideration of this issue.

Walters also seeks to preclude Agent Oppenheim from testifying about "best practices" for gun storage and "how generally gun owners store and secure firearms and ammunition."[8] I will grant the motion to preclude this testimony in the absence of any showing why expert testimony on this subject would be helpful to the jury. The Government will be free to argue by common sense inference from the evidence of where the firearms and ammunition were found at the residence that Walters kept these firearms for purposes that would be most helpful to promote and protect his narcotics trafficking. It will not be helpful for the jury to hear an ATF agent's opinion about best practices of how other people ordinarily store their firearms and ammunition.

### Government's motion for pretrial determination of admissibility of certain evidence (Doc. #100)

I will deny the Government's motion for a further pretrial determination of the admissibility of other evidence. Once a foundation is laid for each item of evidence, I will decide any remaining objections that may raise challenges based on authenticity, hearsay, relevance, and unfair prejudice. To the extent that the Government expresses concerns about the ordering of witnesses with particular evidence, these types of concerns can ordinarily be addressed by means of admitting exhibits subject to further connection.

### CONCLUSION

The Court GRANTS in part, DENIES in part, and DEFERS in part the parties' motions *in limine* and notices as set forth above in this ruling (Docs. #76, #77, #80, #82, #92, #93, #95, #96, #97, #99, #100). If any party believes that the Court has misunderstood an issue or that the

---

[8] Doc. #99 at 2 (quoting Government's expert disclosure notice).

Court has neglected to address an issue raised in their briefing or at oral argument, they are welcome to promptly file a motion for reconsideration or clarification.

Dated at New Haven this 12th day of May 2022.

It is so ordered.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge